IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

FILED

2010 SEP 29  P 4: 29

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

ROBERT D. WHITTAKER, III, on behalf )
of himself and all others similarly situated, )
)
and )
)
ANNA B. WHITTAKER, on behalf )
of herself and all others similarly situated, )
)
Plaintiffs, )
)
v. )   Civil Action No. 1:10CV1090
)                   (AJT/TRJ)
PNC BANK, N.A., )
formerly known as National City Bank, )
)
Defendant. )

## CLASS ACTION COMPLAINT

Plaintiffs Robert D. Whittaker, III, and Anna B. Whittaker, on behalf of themselves and all others similarly situated, by counsel, state as follows for their First Amended Complaint against PNC Bank, N.A., formerly known as National City Bank:[1]

### NATURE OF THE ACTION

1. This is a class action brought under federal law for injunctive and declaratory relief and compensatory and treble damages to redress defendant's violations of the Bank Holding Company Act's anti-tying provisions and the implied contractual duty of good faith and fair dealing.

---

[1] Because most, if not all, of the actions herein took place before the acquisition of National City Bank by PNC Bank, the Complaint refers to the actions of National City Bank, although the proper defendant is PNC Bank as successor to National City.

1

2. Jurisdiction is based on 28 U.S.C. § 1331 as this action arises under the laws of the United States. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

3. Plaintiffs Robert D. Whittaker, III, and Anna B. Whittaker are adult individuals and residents of Carroll County, Maryland.

4. Defendant PNC Bank, N.A. is a bank as that term is defined in Section 2 of the Bank Holding Company Act of 1956 (12 U.S.C. § 1841) and is successor by merger to National City Bank. Among other activities, National City was engaged in the mortgage banking business, providing loans or lines of credit, secured by real property, to consumers.

## NATIONAL CITY'S TAXPAYER-FUNDED BAILOUT

5. In late 2008, amid concerns about National City's capitalization, The PNC Financial Services Group, Inc. acquired National City and affiliated entities for approximately 6.1 billion dollars. Following the closing, PNC received 7.6 billion dollars from the federal government under the Emergency Economic Stabilization Act to "enhance" National City's capitalization.

6. Earlier in the year, as National City's fortunes were fading, it unilaterally and unlawfully changed its policy on subordinating second mortgages it had previously sold to consumers, the very same taxpayers who would later guarantee National City's continued existence.

7. This policy, adopted in February 2008, imposed an arbitrary and blanket prohibition (the "Blanket Policy"), regardless of circumstances, on subordinating National City's

second mortgages to new or modified senior debt secured by non-National City liens having priority over theirs.

8. Under this policy, if National City owns a homeowner's second mortgage, the only way they could refinance their first mortgage was by agreeing to terms dictated by National City. National City's policy jeopardized the financial welfare of its customers and had the foreseeable effect of unnecessarily forcing homeowners into default and foreclosure, even as its competitors were willing to refinance the borrower's first trust at a lower, more affordable market interest rate.

9. This policy was not only unfair to consumers and jeopardizes home ownership, it was also unlawful.

## THE WHITTAKERS' ATTEMPT TO REFINANCE

10. The Whittakers are record owners of real property located in Sykesville, Carroll County, Maryland ("the Sykesville Property").

11. The Whittakers purchased the Sykesville Property in 2004 and sought to refinance in late 2007. At the time, rates on thirty year fixed rate mortgages had fallen below six percent and the Whittakers' adjustable rate first mortgage was scheduled to reset (and therefore increase). The Sykesville Property was encumbered by a first mortgage securing the repayment of approximately $260,000, and a second mortgage, in favor of National City, securing the repayment of approximately $70,000.

12. The Whittakers qualified for a $260,000 thirty year fixed rate mortgage at 5.5 percent. In order to close on the refinance, they needed National City's consent to subordinate its second mortgage. Subordination of second mortgages or deeds of trust is a common service

offered by banks and mortgage companies in exchange for the payment of a fee by the mortgagor. National City had no legitimate business reason to deny this request.

13. Given the fluctuation of interest rates, it is within the contemplation of parties to a home equity loan or line of credit that a borrower will seek, at some point during the term of the loan, to refinance debt secured by a first priority deed of trust or mortgage.

14. The Whittakers' broker submitted the subordination request to National City on or about February 1, 2008, expecting quick approval.

15. Unbeknownst to the Whittakers, as detailed above, National City adopted a policy on or about February 18, 2008, imposing an arbitrary and blanket prohibition, regardless of circumstances, on subordination of their liens to new or modified senior debt secured by non-National City liens having priority over theirs. According to the policy, there is no procedure for borrowers to seek exceptions. Pursuant to the policy, National City arbitrarily and unreasonably withheld its consent to subordination.

16. According to National City spokeswoman Kristen Baird Adams, this written policy was an internal document that should not have been made public.

17. When asked, William Eiler, a spokesman for National City, declined to provide the number of loan customers affected and said the bank's reasons for the policy were "proprietary." Asked whether blocking customers' ability to refinance could push some of them into foreclosure after payment resets, Eiler said: "We cannot predict that this might occur."

## CLASS ACTION ALLEGATIONS

18. In 1956, Congress passed the Bank Holding Company Act ("the Act"), which governs the formation and powers of bank holding companies. Amendments to the statute were enacted in 1970, including section 106, which provides in pertinent part:

4

> A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement:
>
>    \*   \*   \*
>
> (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

12 U.S.C. § 1972.

19. National City's blanket denial of subordination without regard to whether subordination affects its financial position bears no relation to "a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit."

20. In addition to violating the Bank Holding Company Act, National City's blanket refusal to approve subordination to new or modified non-National City senior debt, regardless of whether it impairs or improves its position, breached the implied contractual covenant of good faith and fair dealing. Here, Ohio law, to the extent not inconsistent with federal law, governs the parties' relationship.

21. Under Ohio law, public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. This implied covenant of good faith and fair dealing requires not only honesty but also reasonableness and lack of arbitrary action in the enforcement of any contract.

22. The arbitrary and blanket denial of subordination by National City violates the implied covenant of good faith and fair dealing and is unenforceable under the public policy of Ohio.

23. Given the large number of consumers to which the Blanket Policy applies, the proposed class consists of thousands of persons located throughout the United States; thus the

5

members of the class are so numerous that joinder of all class members is impracticable. The exact number of class members is not presently known to plaintiffs, but can readily be determined by appropriate discovery of defendant's records.

24.     Further, as described above, there are questions of law or fact common to the class, namely:

- Whether National City adopted a policy imposing an arbitrary and blanket prohibition on subordination of their liens to new or modified senior debt secured by non-National City liens;

- Whether that policy violates the Bank Holding Company Act;

- Whether that policy violates the implied covenant of good faith and fair dealing under Ohio law; and,

- Whether National City automatically and arbitrarily withholds its approval of subordination requests.

25.     Moreover, the Plaintiffs' claims are typical of the claims of the class as the blanket anti-subordination policy applies uniformly to all borrowers.

26.     Finally, the Plaintiffs will fairly and adequately protect the interests of the class as they have no interests that are adverse or antagonistic to those of the class.

27.     In addition to satisfying the prerequisites of class treatment under Federal Rule of Civil Procedure 23(a), this proposed class action also satisfies the requirements of Rule 23(b)(2) and (3).

28.     Consistent with Rule 23(b)(2), National City has acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief (and related money damages) are appropriate respecting the class as a whole.

29. Consistent with Rule 23(b)(3), questions of law or fact common to putative class members predominate over questions affecting only individual members and a class action is superior to other available methods (i.e., individual pursuit of litigation) for fairly and efficiently adjudicating the controversy.

30. The proposed nationwide class is as follows:

All borrowers of National City Bank in the United States who have executed junior mortgages/deeds of trust and have had subordination requests denied on or after February 18, 2008, but excluding officers, directors, and employees (and their family members) of National City Bank and its parents, subsidiaries, and affiliates.

### COUNT 1: VIOLATION OF BANK HOLDING COMPANY ACT

31. The previous allegations are incorporated.

32. By virtue of the facts stated above, defendant has violated 12 U.S.C. section 1972.

33. As a direct and proximate result of this violation, plaintiffs have been damaged.

### COUNT 2: BREACH OF CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING

34. The previous allegations are incorporated.

35. By virtue of the facts stated above, defendant has violated its contractual duty of good faith and fair dealing.

36. As a direct and proximate result of this violation, plaintiffs have been damaged.

### PRAYER FOR RELIEF

WHEREFORE, plaintiffs request the following relief:

A. That this Court certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (3);

B. Injunctive and declaratory relief against Defendant to prevent further violations of the Bank Holding Company Act, plus related damages, fees, and costs;

C. An award of compensatory and/or statutory damages;

D. An award of prejudgment interest;

E. An award of treble damages pursuant to 12 U.S.C. § 1975;

F. An award of reasonable attorney's fees and costs; and,

G. Such other and further relief as to the Court may appear just and warranted.

## JURY DEMAND

Trial by jury is demanded as to all claims.

ROBERT D. WHITTAKER, III
ANNA B. WHITTAKER
By Counsel


WEBSTER BOOK LLP

By: /s/ Steven Webster
Steven T. Webster (VSB No. 31975)
swebster@websterbook.com
Aaron S. Book (VSB No. 43868)
abook@websterbook.com
Brian C. Athey (VSB No. 66515)
bathey@websterbook.com
300 N. Washington St., Suite 404
Alexandria, VA 22314
(888) 987-9991 (phone and fax)
*Counsel for Plaintiffs Robert D. Whittaker, III and Anna B. Whittaker*